IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LONGHORN HD LLC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:20-CV-00349-JRG |
| NETSCOUT SYSTEMS, INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant NetScout Systems, Inc.'s ("NetScout") Motion to Stay Pending *Ex Parte* Reexamination (the "Motion"). (Dkt. No. 64). Having considered the Motion and the subsequent briefing, the Court finds that the Motion should be **DENIED**.

**I.   BACKGROUND**

**Procedural Background**: Plaintiff Longhorn HD, LLC ("LHD") filed the above-captioned case on November 5, 2020 and currently asserts a single patent against NetScout: U.S. Patent No. 7,260,846 (the "'846 Patent"). (Dkt. No. 1; Dkt. No. 64 at 1). Nine months after the complaint was filed, on August 5, 2021, Juniper Networks (who is not a party to this action) filed a request for *ex parte* reexamination ("EPR") with the United States Patent and Trademark Office ("PTO") on the '846 Patent (the "Juniper EPR"). (Dkt. No. 68 at 1). The Juniper EPR application is based on prior art that was before the PTO during the original prosecution of the '846 Patent. (*Id.*). On September 1, 2021, the PTO granted the Juniper EPR application as to all claims of the '846 Patent. (Dkt. No. 64 at 2). On December 13, 2021, the PTO issued a first office action in the Juniper EPR, rejecting all claims of the '846 Patent. (Dkt. No. 64-2). On December 15, 2021, NetScout filed the instant Motion to stay the proceedings of this case. (Dkt. No. 64).

The Court ordered expedited briefing in light of the upcoming case deadlines, and LHD filed its response in opposition on December 23, 2021. (Dkt. Nos. 66, 68).

**Case Schedule**: In accordance with its standard practice, the Court has issued a Docket Control Order setting forth the comprehensive schedule in this case. (Dkt. No. 63). Under said Order, expert discovery closed on January 5, 2022 and pre-trial motions are due January 6, 2022. The pre-trial conference is currently set for February 28, 2022 and trial is set for April 4, 2022.

## II.   LEGAL STANDARD

"A district court has the inherent power to control its own docket, including the power to stay proceedings before it." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2016 WL 1162162, at *1 (E.D. Tex. Mar. 23, 2016). "In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). "How to best manage the Court's docket 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, Case No. 2:19-cv-225, 2021 WL 121154, at *1 (E.D. Tex. Jan. 13, 2021) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). In considering a motion such as this, the Court undertakes its analysis by considering the practical realities and the unique facts and circumstances of each individual case. *Id.*

## III.   DISCUSSION

NetScout argues that this case should be stayed because the PTO has rejected all claims of the '846 Patent and simplification of the issues is "near certain" given the claims are unlikely to survive as currently written in light of the rejection. (Dkt. No. 64 at 3). NetScout argues that

*Ramot* dictates that this case should be stayed because this case is less mature than in *Ramot* given pretrial briefing has not yet begun.  (*Id.* at 4).

LHD responds that the case is in a "late stage" as fact discovery has closed, expert reports have been exchanged, and the parties are preparing for pre-trial motions.  (Dkt. No. 68 at 6).  LHD argues that the Juniper EPR is substantively weak and involves a prior art reference the PTO already considered during prosecution.  (*Id.* at 1–2).  LHD points out that the Juniper EPR—and EPRs in general—does not have an estoppel effect (unlike *inter partes* reviews) so there will be no simplification of the issues.  (*Id.* at 9–10).  LHD also argues that it will be prejudiced by an indefinite delay because there is no limitation on who can file an EPR.  (*Id.* at 7).  Put differently, LHD argues that if the Juniper EPR is ultimately unsuccessful, NetScout or another third party can submit another EPR application and essentially stay this litigation indefinitely.[1]  (*Id.*).

As part of the PTO's EPR regime, any person may file a request for reexamination regarding any claim of any patent.  35 U.S.C. § 302 ("Section 302").  Section 302 was added to the United States Code through Pub. L. 96-517, which passed December 12, 1980.  Procedures for reexamination of issued patents began on July 1, 1981 when Pub. L. 96-517 went into effect.  *See* MPEP § 2209.  Thirty years later, on September 16, 2011, President Obama signed Pub. L. 112-29, which is known as the Leahy-Smith America Invents Act ("AIA").  Although the AIA did not abrogate Section 302 and EPR proceedings, it created a new adversarial avenue to challenge the validity of existing patents before the Executive Branch by means of *inter partes* reviews ("IPR").  35 U.S.C. § 311.  The AIA contains numerous sections outlining the multiple phases and procedures of IPR proceedings.  35 U.S.C. §§ 312–19.  For example, the AIA established that IPR proceedings are heard by "at least 3 members of the Patent Trial and Appeal Board [("PTAB")]"

---

[1] LHD argues that this is particularly true given the PTO grants 92.2% of requests for reexamination and there is no timeline for the length of an *ex parte* reexamination.  (Dkt. No. 68 at 2, 7–8) (citing Dkt. No. 68-2).

rather than a single examiner from the PTO as in EPR proceedings.  35 U.S.C. § 6(c); MPEP § 2209.

No IPR has been instituted against the '846 Patent in this case.[2]  Nonetheless, NetScout asks this Court to stay this case after the close of expert discovery based upon a pending EPR filed by an unrelated third party, which EPR was filed nine months after this case began.  Having considered the factors outlined above and the particular facts and circumstances of this case, the Court declines to stay this action.

**Prejudice and Tactical Disadvantage**:  The Court finds that, in this particular case, a stay will prejudice LHD by creating a clear tactical disadvantage to LHD.  As LHD correctly notes, NetScout did not file the Juniper EPR and nothing prevents NetScout—or any other party—from filing an EPR on the '846 Patent in the future if the Juniper EPR is eventually unsuccessful.  Notably, unlike an IPR, there is no timeline for the duration of an EPR.  Indeed, the average EPR currently lasts 25.7 months.  (Dkt. No. 68-2 at 3).  Further, the failure of anyone (NetScout or Juniper Networks) to initiate an EPR until nine months after this case was filed would bring about a substantial waste of resources if a stay lasting over two year were to be granted.  The Court is persuaded that such a delay in filing the EPR coupled with the risk of further un-ending EPRs weighs against a stay.[3]

**Simplification of the Issues**:   The Court is not persuaded by NetScout's conclusory assertion that "simplification of the issues is 'near certain.'"  (Dkt. No. 64 at 3).  NetScout has

---

[2] Although NetScout has filed an IPR (Dkt. No. 68 at 1–2), NetScout waited over nine months after this case was filed to file its IPR petition.  NetScout now seeks to stay this case based on an EPR it never filed.  This effort appears to be overtly strategic by circumventing the IPR regime set forth by Congress in the AIA.

[3] NetScout argues that LHD will not be prejudiced by a stay because LHD "is a patent assertion entity that does not compete with [NetScout]. [LHD] can be fully compensated for any alleged harm by monetary damages."  (Dkt. No. 64 at 4–5).  This Court has cautioned against such an argument, noting that delaying a patentee's lawsuit where the patentee is not a direct competitor is "far from non-prejudicial."  *Garrity Power Servs. LLC v. Samsung Elecs. Co. Ltd.*, Case No. 2:20-cv-269, Dkt. No. 227 at 3 n.1 (E.D. Tex. Dec. 10, 2021).

made no showing that the merits of the Juniper EPR will materially impact the parties' positions or arguments in this case.[4]  Indeed, NetScout did not find the arguments advanced in the Juniper EPR strong enough to initiate itself.  (Dkt. No. 68 at 5).  Instead, NetScout waited over nine months to file its own IPR challenge, never filed an EPR challenge, and is asserting prior art in its IPR that is different from the prior art asserted in the Juniper EPR.  Said differently, NetScout's Motion relies on a third party's EPR, which makes arguments that NetScout has apparently concluded are not meritorious enough to make in this case or its IPR.  Such a strategy reveals that it is not "near certain" that the Juniper EPR will simplify the issues between LHD and NetScout in this case.  Further, the Juniper EPR puts forth the same reference that was before the examiner during the original prosecution of the patent.  (*Id.*).  Absent a substantive showing, the Court is not persuaded that an attempt to re-urge old prior art that the PTO has already considered with a new examiner will simplify the issues in the case.[5]

NetScout is misguided by placing outsized emphasis on this Court's prior decisions in *Ramot* and *AGIS Software Dev. LLC v. Google LLC*, Case No. 2:19-cv-361, 2021 WL 465424 (E.D. Tex. Feb. 9, 2021).  (Dkt. No. 64 at 3–4).  In both cases—as here—the Court expressly emphasized that its decisions were based on the particular facts and circumstances of each case.  *Ramot*, 2021 WL 121154, at *2 ("Having considered the factors outlined above and the unique

---

[4] Certainly, the parties' positions will be materially affected if all of the claims are canceled.  However, it also is possible that LHD amends the claims in a way that has no bearing on this case.  Further, it is possible that LHD persuades the PTO that the rejection is meritless, in which case the claims would remain unchanged.  NetScout has made no showing that any one of these possible outcomes is more likely than the other based on the merits of the Juniper EPR.  In light of the various potential outcomes of the Juniper EPR, the Court cannot conclude, without engaging in improper speculation, that the Juniper EPR will ultimately simplify the issues in this case.  *See also* n. 6, *infra* (reciting EPR statistics from the PTO).

[5] It also is significant that NetScout will not be estopped from raising the arguments advanced in the Juniper EPR— or any other EPR—subsequently in this Court.  *KIPB LLC v. Samsung Elecs. Co., Ltd.*, Case No. 2:19-cv-056, 2019 WL 6173365, at *2 (E.D. Tex. Nov. 20, 2019).  This also supports the conclusion that the Juniper EPR will not result in a simplification of the issues in this case.  Rather than pursue the IPR option which Congress created via the AIA, NetScout appears to prefer examiner shopping that urges old art before a different examiner without the risk of estoppel.  The Court does not desire to endorse such a strategy.

facts and circumstances of this case, the Court is persuaded that the benefits of a stay outweigh the costs of postponing resolution of the litigation in this particular case."); *AGIS*, 2021 WL 465424, at *3 ("Having considered the factors outlined above and the specific facts and circumstances of this case, the Court is persuaded that the benefits of a stay outweigh the costs of postponing resolution of the litigation in this particular case."). Specifically, both *Ramot* and *AGIS* were decided during the early stages of an unprecedented global pandemic when the Court had suspended all jury trials and other in-person proceedings. Those facts are not present here. This is a significant distinction that weighs against a stay under both the second and third *Soverain* factors in this case. Although the pandemic is still ongoing, the Court has resumed jury trials and in-person proceedings. While minor adjustments in trial dates may be needed in some cases, the Court does not envision a blanket cancellation of all trials for a period of several months as in *Ramot* and *AGIS*.

When presented with a motion to stay, the Court considers the practical realities and particular circumstances of each case and renders a decision based on those unique facts. Notwithstanding its prior decisions, including *Ramot* and *AGIS*, the Court has not adopted a bright-line rule that a stay will be granted because a single examiner at the PTO has initially rejected the claims at issue in an EPR, especially where that party has—in the most favorable reading of the facts—drug its feet as to the IPR process.[6] Accordingly, the Court finds the simplification of the issues factor does not favor a stay in this case.

---

[6] NetScout's arguments with regard to the likelihood of outcomes in the EPR process are further undermined by PTO statistics. Such statistics show that 92.2% of EPR applications are granted. (Dkt. No. 68-2 at 2). However, after an EPR application is granted, the fate of the claims is far from predetermined. Specifically, 20.9% of granted EPRs ultimately result in all claims being confirmed and 13.1% result in all claims being canceled. (*Id.* at 3). Although 66% of all granted EPRs result in some changes to the claims, there is no way to know how or if such changes are significant or minor. (*Id.*). The average pendency of an EPR is 25.7 months. (*Id.*). These statistics cast serious doubt on the conclusion that an EPR—even where the claims have initially been rejected—will result in a simplification of the issues.

**Stage of the Case**: As noted above, significant resources have been expended to date in to this case. At the time NetScout filed its Motion, fact discovery had closed, expert discovery was nearly complete, pre-trial briefing was imminent, and a date for jury selection had been set. Expert discovery is now closed and pre-trial briefing is due. Although it is true that the parties, and the Court, will still invest additional resources in this case, all dates for remaining case events—including trial—have been set and the Court intends to maintain those dates. Accordingly, the Court finds this factor does not favor a stay.

## IV.  CONCLUSION

For the reasons set forth above and based on the unique facts and circumstances of this case, NetScout's Motion to stay this case pending the Juniper EPR is **DENIED**.

**So ORDERED and SIGNED this 6th day of January, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE