IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LONGHORN HD LLC, | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Case No. 2:20-cv-00349-JRG-RSP |
| NETSCOUT SYSTEMS, INC., | § § § | |
| *Defendant*. | § § | |

REPORT AND RECOMMENDATION

Before the Court is the Motion for Summary Judgment of Non-Infringement filed by Defendant NetScout Systems, Inc. Dkt. No. 73. Having considered the briefing, the motion should be **DENIED**.

I.   Background

Longhorn filed the present suit on November 5, 2020 alleging infringement of U.S. Patent No. 7,260,846 (the "'846 Patent"). Dkt. No. 1. Longhorn asserts Claims 1, 2, 4, 9, and 12 of the '846 Patent (the "Asserted Claims"), which are generally related to systems and methods for the storage of packet field data and statistical analysis to improve the performance of network intrusion detection systems. Dkt. No. 73 at 1.

Relevant to the issues here, Claim 1 recites an intrusion detection system (IDS) comprising a "traffic sniffer" that extracts network packets; a "traffic parser" that extracts "individual data from defined packet fields" of the network packets; and a "traffic logger" that stores the "individual data" in a database. '846 Patent at 10:50-58. Claims 7[1] and 12 each recite an intrusion detection

---

[1] At the Pre-Trial Conference on March 1, 2022, Longhorn withdrew Claims 7 and 8. Dkt. No. 119. However, Longhorn still asserts Claim 9, which ultimately depends from Claim 7.

1

method that comprises the steps of monitoring network traffic, extracting network packets, and storing individual components of the network packets in a database. *Id.* at 11:29-34, 12:30-38.

Longhorn accuses five products of infringement: Arbor Edge Defense ("AED"), Arbor Threat Mitigation System ("TMS"), Arbor Cloud ("Cloud"), Arbor Sightline ("Sightline"), and NetScout Cyber Investigation (collectively, the "Accused Products"). Dkt. No. 73 at 1

## II.     Legal Standard

Summary judgment should be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986). A "material fact" is one that "might affect the outcome" of the case, and a dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. Any evidence must be viewed in the light most favorable to the nonmovant. *See id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

## III.    Analysis

The issue between the parties is whether the Accused Products extract network packets and store the individual fields or components of the extracted network packets in a database. Over the course of the briefing, the issue narrowed to whether the Accused Products infringe the Asserted Claims when the Accused Products store a running tally of statistics (e.g. total number of packets

or bytes) corresponding to specific flow entries after storing the individual components of a network packet. Dkt. No. 94 at 1; Dkt. No. 100 at 1.

For the narrow issue, NetScout argues that because the parties do not dispute that the individual packet fields come only from the first packet in a flow, there is no dispute that the TMS, AED, Cloud, and Cyber Investigator "do not store any individual packet field data for any extracted packet after the first packet of a group." *Id.* Dkt. No. 94 at 6, 7. Additionally, NetScout argues that the "databases utilized by Sightline are even further removed from the flow tables" used by the other Accused Products because each record tracks statistics for a much larger group of packets. *Id.* at 8. Therefore, NetScout argues that the Accused Products do not meet the plain language of the Asserted Claims because they do not store individual field or component information for the extracted packets beyond the first packet of a network flow. *Id.* at 8, 10.

In response, Longhorn argues that "NetScout admits that at least some network packets are parsed and at least some individual fields are stored." Dkt. No. 100 at 1. Because of this, Longhorn argues that there is a genuine dispute as to whether the individual field or component information being stored in the database satisfies the claim requirements. *Id.* at 1-2. Furthermore, Longhorn argues that the evidence supports the finding that the Sightline product stores multiple packets in a database. *Id.* at 3.

The Court finds that there is a genuine dispute as to whether the Accused Products infringe the Asserted Claims. Based on the undisputed facts, the Accused Products store in a database at least the individual field or component information for the first packet in a specific network flow. Dkt. No. 94 at 6. As to the storage of information after the first network packet, the parties' experts provide conflicting opinions. *E.g., Compare* Dkt. No. 94-2 at ¶ 187-92 (NetScout's expert explaining how flow records are stored for TMS and AED), *with* Dkt. No. 73-1 at ¶¶ 125-133, A-a-8-A-a-9 (Longhorn's expert citing documents and deposition testimony to explain how the TMS

3

parses and stores information). Because the experts provide conflicting opinions supported by evidence, the Court finds there is a genuine dispute as to whether the Accused Products infringe the limitations of the Asserted Claims.

### IV. Conclusion

The Court finds that a genuine dispute exists, which precludes summary judgement of non-infringement. Therefore, it is recommended that the motion be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **by April 13, 2022** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 1st day of April, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE